IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LINDA K.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:21-CV-283-C-BQ |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Linda K. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Commissioner's decision denying her applications for a period of disability and disability insurance benefits, as well as supplemental security income. In accordance with *Special Order 3-251* and 28 U.S.C. § 636(b), this case was automatically referred to the undersigned United States Magistrate Judge. *See* ECF No. 6. After carefully considering the parties' briefing and arguments, the administrative record, and applicable law, the undersigned recommends that the United States District Judge affirm the Commissioner's decision.

### I.  Statement of the Case

On September 18, 2019, Plaintiff filed an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income, alleging a disability onset date of August 12, 2019. Tr. 10. The Social Security Administration (SSA) denied her applications on January 14, 2020, and again upon reconsideration on February 28, 2020. Tr. 10, 58–59, 78–79. Plaintiff thereafter requested a hearing for review. Tr. 10, 136–37. Represented by counsel, Plaintiff appeared and testified before an administrative law judge (ALJ)

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

on April 5, 2021. Tr. 10, 29–57. An impartial vocational expert (VE) also appeared and testified. Tr. 10, 29–57.

The ALJ determined that Plaintiff was not disabled because she can perform past relevant work and other jobs that exist in significant numbers in the national economy. Tr. 20–22. The Appeals Council denied Plaintiff's request for review. Tr. 1. As a result of this denial, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.   Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2012); *see, e.g., Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)). If substantial evidence supports the Commissioner's findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III. Facts

Plaintiff claims she became disabled on August 12, 2019, due to myriad health issues, including major depressive disorder, degenerative disc disease, hypertension, generalized anxiety disorder, and osteoarthritis of the lower back. Tr. 10, 13–15, 60–61, 69–70; Pl.'s Br. 1, ECF No. 17. Plaintiff has a high school education and previous work history as a customer service representative and a house parent. Tr. 20. She further reported one year of higher learning at an

institution known as the Computer Learning Center. Tr. 35 ("No, I don't [have a four-year college degree]. I was at the Computer Learning Center for a year.").

At step one, the ALJ found Plaintiff has not engaged in "substantial gainful activity" since August 12, 2019—i.e., the alleged onset date. Tr. 13. The ALJ found at step two that Plaintiff has the following severe impairments: "lumbar degenerative disc disease with anterolisthesis" and "morbid obesity." *Id.* (emphasis omitted). The ALJ also concluded that Plaintiff has several medically determinable impairments that are not severe, including hypertension, diabetes mellitus, use of glasses for visual defects, anxiety, and depression. Tr. 13–15. Despite the ALJ finding severe impairments, the ALJ nevertheless found at step three that Plaintiff does not have an impairment or combination of impairments that are listed in, or that equal in severity, an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 15 (discussing Listing 1.16).

The ALJ then assessed Plaintiff's residual functional capacity (RFC) and found that Plaintiff can perform light work except she "can sit for 6 hours and stand/walk for 5 hours in an 8-hour workday," "can lift/carry 20 pounds occasionally, 10 pounds frequently," "can never climb ladders, ropes, scaffolds," and can "occasionally climb ramps/stairs, occasionally stoop, kneel, crouch, or crawl." Tr. 15 (emphasis omitted). Relying on the testimony of a VE, the ALJ subsequently concluded that Plaintiff could perform past relevant work as a customer service representative. Tr. 20. Alternatively, the ALJ found that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy, including cashier II, hand packager, and bench assembler (Tr. 20–22), based on the VE's testimony that an individual of Plaintiff's age, education, past relevant work experience, and RFC would be able to perform the requirements of those jobs. Tr. 21, 52–54. Accordingly, the ALJ determined that Plaintiff is not disabled. Tr. 22.

Plaintiff raises a single issue on appeal: The ALJ's RFC determination is unsupported by substantial evidence because she failed to properly evaluate the opinions of Plaintiff's treating physician and treating nurse practitioner. Pl.'s Br. 1. The Court examines her arguments below.

### IV. Discussion

#### A. The parties' positions

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of Kimberlee Gutierrez, Family Nurse Practitioner (FNP), and Jason Lentz, M.D. Pl's Br. 7. More precisely, Plaintiff alleges the ALJ "failed to provide adequate explanation for how she considered the supportability and consistency factors as required by the Regulations." *Id.* at 9. She posits that the ALJ is required to "<u>explain</u> her findings regarding the supportability and consistency for each of the medical opinions," but instead, the ALJ "merely provided a conclusion in the guise of analysis." *Id.* at 10. Plaintiff further argues that the ALJ failed "to consider the ample explanation Plaintiff's providers gave in support of their opinions," "mischaracterized the evidence of the record to support her own findings," and failed "to provide any explanation substantiated by evidence in the record to support her conclusory findings." *Id.* at 10–11. Moreover, Plaintiff alleges that: (1) FNP Gutierrez's and Dr. Lentz's "opinions were at least partially consistent with the findings of [consulting examiner] Dr. Stanley"; (2) the ALJ failed to explain how FNP Gutierrez's and Dr. Lentz's recommendations that Plaintiff "remain active and increase physical activity" supports the ALJ's rejection of their opinions; (3) "the ALJ's requirement that FNP Gutierrez explicitly document her limitation that Plaintiff elevate her legs throughout the day places the provider's opinion at a heightened standard than required by the Regulations"; and (4) the ALJ's rejection of FNP Gutierrez's limitation that Plaintiff would need a cane is unsupported. *Id.* at 11–15.

Plaintiff concludes that the ALJ's errors are harmful because the providers' suggested limitations, if adopted, would have precluded her ability to engage in work, thereby rendering her disabled. *Id.* at 15–16. Thus, Plaintiff asks this Court to vacate the Commissioner's final decision and remand this case for further proceedings. *Id.* at 16.

Conversely, the Commissioner maintains that the ALJ's RFC is supported by substantial evidence. Def.'s Br. 3, ECF No. 20. As an initial matter, the Commissioner challenges Plaintiff's assertion that the ALJ cherry-picked evidence in support of her determination. *Id.* at 4. Instead, the Commissioner asserts that the ALJ properly considered all the record evidence, including: (1) treatment records; (2) the nature, location, duration, frequency, and intensity of Plaintiff's alleged pain and other symptoms; (3) precipitating and aggravating factors; (4) medications and reported side effects; (5) the conservative nature of Plaintiff's treatment; (6) other measures that Plaintiff has taken to address her symptoms (such as stretching her back during the day); (7) evidence that Plaintiff walked without a cane; (8) evidence that Plaintiff stopped working for non-medical reasons (i.e., Plaintiff testified that her alleged disability onset date "corresponds to the date she was laid off from her job for allegedly failing to call in when she was sick, although she maintains she did in fact call in"); (9) Plaintiff's functional limitations as supported by objective medical evidence; (10) Plaintiff's activities of daily living; and (11) the opinions of state agency medical consultants (SAMCs). *Id.* at 4–5. In sum, the Commissioner asserts that Plaintiff is asking the Court to reweigh and "reconsider the evidence," which is a task within the province of the ALJ. *Id.* at 6–7.

Plaintiff's reply largely reiterates the arguments in her opening brief. ECF No. 21. In addition, she asserts that, despite the Commissioner's list of factors considered by the ALJ, the ALJ erred by failing "to explain *how* she considered the majority of this evidence when

determining FNP Gutierrez and Dr. Lentz's opinion was not persuasive." Pl.'s Reply 2–3, ECF No. 21. Plaintiff contends that the Commissioner provides only "*post-hoc* rationalization" in support of the ALJ's opinion. *Id.* at 3. In conclusion, "Plaintiff asserts that the ALJ's evaluation of the opinions of her treating providers is not legally sufficient," thus requiring remand. *Id.* at 5.

### B. The ALJ's RFC determination is supported by substantial evidence.

Plaintiff posits that the ALJ failed to properly evaluate the opinions of Dr. Lentz and FNP Gutierrez, thus invalidating the ALJ's RFC determination. Pl.'s Br. 7. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The ALJ evaluates every medical opinion regardless of its source but "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520(a)(3), 404.1520c(a), 416.920c(a).[2]

Under the regulations, the ALJ should review the following factors in evaluating a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). In her decision, however, an ALJ need only specifically address two factors: the supportability of a medical opinion and the consistency of that opinion—i.e., factors one and two. §§ 404.1520c(b)(2), 416.920c(b)(2).

Supportability evaluates how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)."

---

[2] Plaintiff filed her application after March 27, 2017; therefore, §§ 404.1520c and 416.920c(a) apply.

§§ 404.1520c(c)(1), 416.920c(c)(1). "In articulating how they considered the supportability factor, ALJs may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, [and] that the physician did not consider certain evidence, did not examine the claimant, . . . or did not provide a detailed explanation for [the] opinion." *Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (citations omitted) (collecting sources); *see, e.g., Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-cv-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (noting the lack of treatment notes supporting a doctor's opinion). Thus, "supportability looks internally to the bases presented by the medical opinion itself." *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022); *accord* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853 (Jan. 18, 2017) (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation").

Consistency, on the other hand, evaluates the degree to which a medical opinion agrees "with the evidence from other medical sources and nonmedical sources in the claim." §§ 404.1520c(c)(2), 416.920c(c)(2). "Consistency has been described as . . . 'an all-encompassing inquiry focused on how well a medical source' agrees with other sources in 'the entire record.'" *Sharon H.*, 2022 WL 3951488, at *3 (quoting *Vellone ex rel. Vellone v. Saul*, No. 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted by* 2021 WL 2801138 (S.D.N.Y. July 6, 2021)). In this way, "consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Id.* (citing *Hubbard*, 2022 WL 196297, at *4); *accord* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853 (defining consistency

8

as "[t]he extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim").

In this case, the ALJ began her RFC analysis by noting that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative finding(s) in accordance with the [Regulations]." Tr. 15. FNP Gutierrez, Plaintiff's treating primary care provider, completed four medical source statements, two of which were co-signed by Dr. Lentz, a primary care physician.[3] Tr. 409 (dated Nov. 21, 2017), 553–56 (dated Aug. 10, 2020), 563–66 (dated Sept. 29, 2020), 618 (dated Apr. 14, 2021). Through these statements, the providers opined that Plaintiff could engage in sedentary work with various limitations, including:

(1) Plaintiff would require unspecified accommodations for limited arm range of motion, for ability to sit/stand/shift at will, and for problems with stooping and bending;
(2) Plaintiff would be off task 10–15% of the workday;
(3) Plaintiff has the ability to maintain concentration for approximately 1–2 hours;
(4) Plaintiff would likely be absent 2–4 times per month;
(5) Plaintiff could occasionally lift/carry less than 10 pounds and rarely lift/carry 10–20 pounds;
(6) Plaintiff could sit and stand/walk for 2–4 hours each in an 8-hour workday, and would require the option to sit/stand at will and switch positions as needed;
(7) While sitting, Plaintiff's legs should be elevated;
(8) Plaintiff requires a cane intermittently "if needed," and without such a device, would be able to ambulate less than two blocks;[4]
(9) Plaintiff had manipulative limitations and therefore could only occasionally use her arms, hands, and feet in the following ways: reaching overhead, reaching all other, handling, fingering, feeling, pushing/pulling, and using foot controls;

---

[3] Although Dr. Lentz co-signed only the August 2020 and September 2020 statements, the Court discusses all four statements together because the ALJ and the parties addressed all four. *See generally* Tr. 19; Pl.'s Br. 8–16; Def.'s Br. 7.

[4] The assessment that Plaintiff requires a cane appears in the September 2020 statement. Tr. 564–65. The August 2020 statement, on the other hand, reflects that the providers did *not* believe Plaintiff requires a cane, either regularly or as needed. Tr. 554–55.

9

    (10) Plaintiff could rarely climb stairs and ramps; never climb ladders and scaffolds; could either rarely or never balance, stoop, kneel, crouch, crawl; and could either occasionally or never rotate her head and neck (referred to collectively as "postural activities"); and

    (11) Plaintiff could never be in situations with unprotected heights or moving mechanical parts; occasionally operate a vehicle or be exposed to humidity/wetness; could either occasionally or rarely be exposed to dust/odors/fumes/pulmonary irritants; and rarely work in conditions with extreme cold, extreme heat, or vibrations (referred to collectively as "environmental limitations").

Tr. 409, 553–56, 563–66, 618.[5] The ALJ discussed and summarized these limitations, found across all four medical source statements. Tr. 18–19. Thereafter, the ALJ collectively analyzed the opinions as follows:

> The opinions provided by Ms. Gutierrez and signed by Dr. Lentz are not persuasive. Physical examination findings documented by these providers consistently show normal objective findings, including normal gait, which is not consistent with the increasingly higher limitations provided in each opinion statement and the requirement of an assistive device. At each appointment these providers encourage the claimant to remain active and increase physical activity. There is no recommendation at any of the appointments for the claimant to elevate her legs. There is no indication in the record of limitations with the claimant's hands or with any manipulative issues that would support the manipulative limitations in the opinions. The medical evidence of record overall, and including from these providers, is inconsistent with, and fails to support, the limitations provided in any of these opinions.

Tr. 19 (internal citations omitted). Plaintiff contends that this discussion is insufficient in that "the ALJ failed to provide adequate explanation for how she considered the supportability and consistency factors as required by the Regulations." Pl.'s Br. 9.

    An ALJ need not use the term "supportability" to satisfy her duty under the regulations. *See Linda M. v. Comm'r, Soc. Sec. Admin.*, No. 3:21-CV-210-BK, 2022 WL 4125095, at *3–4 (N.D. Tex. Sept. 8, 2022); *see also Cormany v. Kijakazi*, No. 5:21CV933, 2022 WL 4115232, at

---

[5] In addition to the foregoing limitations, FNP Gutierrez and Dr. Lentz completed a treating source statement as to Plaintiff's psychological conditions. Tr. 568–72. The Court does not discuss this assessment, however, because Plaintiff does not challenge the mental RFC determination. *See* Pl.'s Br. 6–16; Pl.'s Reply Br. 1–6.

\*5 (N.D. Ohio Sept. 9, 2022) ("Although the ALJ did not use the words 'supportability' and 'consistency' in the decision, this omission does not necessarily mean that the ALJ did not consider these factors."). In finding that FNP Gutierrez's assessment was not corroborated by Plaintiff's physical examinations—i.e., the objective medical evidence—the ALJ indicated she was considering the supportability of the medical professional's opinion. *See Linda M.*, 2022 WL 4125095, at \*3–4 (finding ALJ adequately addressed supportability where he noted that a nurse's assessment "provide[d] few objective findings to support the degree of limitation proposed" (citation omitted)). Indeed, as the ALJ observed, FNP Gutierrez and Dr. Lentz consistently reported unremarkable physical examinations. *See* Tr. 413, 436, 481, 503, 524, 598. Plaintiff, however, contends that the ALJ considered only the evidence in support of her position and overlooked "the ample explanation Plaintiff's providers gave in support of their opinions." Pl.'s Br. 10. The Court disagrees.

As an initial matter, the Court notes that Plaintiff's providers did not provide "ample" explanations. FNP Gutierrez provided zero explanation in support of her November 2017 statement, and to support the April 2021 letter, she said only, "I have been managing chronic medical conditions for above patient, [Plaintiff,] for over 5 years now." Tr. 409, 618. FNP Gutierrez and Dr. Lentz did, however, provide support for some of the limitations found within the August and September 2020 statements. For example, in support of the lifting/carrying limitations, they referred to an MRI of the lumbar spine revealing severe bilateral neural foraminal narrowing, disc bulge, and mild spinal stenosis. Tr. 554, 564. Yet, the providers did not attach the MRI results or even provide a date as to when the MRI was conducted.[6] *See id.* And concerning the sitting/standing/walking limitations, the providers noted that Plaintiff's lower back

---

[6] The Plaintiff did not cite, and the Court did not find, any MRI results in the record.

pain can be exacerbated if she is not given breaks, but they again provided no further details or evidence in support. *Id.* What's more, the providers included no explanation in support of their opinions regarding Plaintiff's need for a cane, Plaintiff's ability to use her hands and feet, Plaintiff's postural activities and environmental limitations, or any other suggested limitation. Tr. 554–56, 564–66.

Opinions without supporting explanatory notes, objective tests, or examinations are "not entitled to considerable weight." *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (per curiam); *accord Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *7 (N.D. Tex. Dec. 4, 2020) ("The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are brief and conclusory and lack explanatory notes or supporting objective tests and examinations."). Thus, contrary to Plaintiff's assertion that the ALJ failed to consider the providers' "ample" explanations, the ALJ properly performed her role and considered the inherent supportability of the opinion evidence given that they were largely unsubstantiated. *See* §§ 404.1520c(c)(1), 416.920c(c)(1) (instructing that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source . . . the more persuasive the medical opinion[] . . . will be"); *see also Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (per curiam) (explaining that in discounting plaintiff's treating physician's opinions, which were contained on a conclusory questionnaire, "the ALJ performed her role of weighing conflicting evidence and resolving the conflict").

Plaintiff further contends that the ALJ elected to "pick and choose" the evidence in the record to support her view, and that she "mischaracterized the evidence of the record to support her own findings." Pl.'s Br. 10–11. But "[t]he fact that the ALJ cited certain evidence that [s]he felt supported h[er] decision does not mean that [s]he failed to consider all of the other evidence

in the record." *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (per curiam); *accord Everett v. Saul*, No. 4:21-cv-01535, 2022 WL 3719982, at *5 (S.D. Tex. Aug. 29, 2022) (observing that "the ALJ need not cite each and every piece of medical evidence considered in order to prove that she fulfilled her duty to consider the entire record"). Indeed, Plaintiff provides no support for her allegation that the ALJ mischaracterized the medical evidence concerning Plaintiff's manipulative limitations. *See* Pl.'s Br. 10–11 (supplying no explanation or citation). It is true that Plaintiff once complained of finger stiffness in her right middle finger[7] (Tr. 499), but rather than "ignoring" or "mischaracterizing" this evidence, the ALJ considered FNP Gutierrez's own objective medical findings and concluded that there was no support for the severity of the manipulative limitations she and Dr. Lentz suggested. *See* Tr. 19 ("There is no indication in the record of limitations with the claimant's hands or with any manipulative issues that would support the manipulative limitations in the opinions."). The ALJ's failure to "specifically mention certain pieces of evidence" does not constitute reversible error. *Baker v. Saul*, No. 4:20-CV-565, 2021 WL 3232439, at *3 (S.D. Tex. June 17, 2021), *R. & R. adopted by* 2021 WL 3207970 (S.D. Tex. July 28, 2021).

Plaintiff likewise challenges the ALJ's observation that FNP Gutierrez consistently "encourage[d] the claimant to remain active and increase physical activity." Pl.'s Br. 12 (quoting Tr. 19). In her view, this was "legally erroneous" where the ALJ "failed to provide any indication as to how FNP Gutierrez's recommendation for diet and exercise does anything to contradict FNP Gutierrez and Dr. Lentz's opinions." *Id.* at 12–13. Contrary to Plaintiff's view, it is clear to the Court that the ALJ was providing another example of the un-supportability of the providers'

---

[7] Plaintiff asserts that the record shows "repeated complaints of finger stiffness." Pl.'s Br. 11. But the pages to which she cites do not support that claim. *See id.* (citing Tr. 413, 489). The Court's review revealed a single instance in which Plaintiff reported two weeks of stiffness, and FNP Gutierrez diagnosed her with "mild edema" and "[s]tenosing tenosynovitis" or "trigger finger." Tr. 499, 503, 505.

assessments. Despite the apparent contradiction between their opined disabling limitations and the fact that FNP Gutierrez routinely instructed Plaintiff to "keep active" and exercise, the providers offered no explanation to bridge the gap. Such an omission undermines the credibility of the opinion. *See Cline v. Astrue*, No. 3:06-CV-1628-B, 2008 WL 647544, at *4 (N.D. Tex. Mar. 5, 2008) ("[T]hroughout the relevant period, Plaintiff's treating physicians encouraged her to participate in exercise programs, which is inconsistent with a conclusion of disabling pain."); *Reyes v. Barnhart*, No. SA–01–CA–0032nn, 2002 WL 1492208, at *5 (W.D. Tex. Mar. 31, 2002) (finding no error where ALJ discounted a physician's opinion because it was "not supported by clinical or laboratory techniques and [was] inconsistent with the other substantial evidence in the record" including that plaintiff had "been told to be active and exercise"), *aff'd*, 70 F. App'x 216 (5th Cir. 2003); *see also Zapata v. Colvin*, No. 4:13–CV–340–Y, 2014 WL 4354243, at *9 (N.D. Tex. Sept. 2, 2014) (affirming ALJ's consideration of contradiction between the treating physician's opinion and other record evidence).

Plaintiff next argues that the ALJ's supportability discussion is insufficient because she "fails to provide an adequate explanation to support her findings" where she observed that FNP Gutierrez's treatments did not include a recommendation that Plaintiff elevate her legs throughout the day. Pl.'s Br. 13. In support, Plaintiff cites *De La Cruz v. Colvin*, No. 3:15-CV-01949-K-BH, 2016 WL 5173329 (N.D. Tex. Sept. 1, 2016), *R. & R. adopted by* 2016 WL 5122267 (N.D. Tex. Sept. 21, 2016) and *Rodela v. Comm'r of Soc. Sec.*, No. 2:20-CV-45, 2021 WL 4398384 (S.D. Tex. Sept. 27, 2021). These cases, however, undermine Plaintiff's position. In *De La Cruz*, the court rejected the claimant's argument "that the ALJ erred in relying on the fact that some limitations were not reported in progress notes" because "in finding that [the doctor's] opinions were inconsistent with the objective medical evidence, the ALJ relied on more than the fact that

some limitations were not reported in progress notes, or that one report was silent on a medical issue." 2016 WL 5173329, at *10–11. So, too, here.

In this case, the ALJ's observation that Plaintiff's providers never instructed her to elevate her legs throughout the day was merely one of several grounds on which the ALJ found their opinions less persuasive. *See* Tr. 19. Likewise, the *Rodela* court rejected a similar argument because the regulations "allow[] the ALJ to test the treating physician's conclusions against his own records, particularly if nothing else in the record on appeal fills in those gaps in a manner consistent with his conclusions." 2021 WL 4398384, at *2. Ultimately, because it is within the ALJ's province to consider the fact "the physician's own treatment notes do not support the physician's opinion," the ALJ did not err by doing so in this case. *Starman*, 2021 WL 4459729, at *4.

Turning to consistency, Plaintiff concedes that the ALJ discussed this factor as to FNP Gutierrez and Dr. Lentz but argues that the discussion was inadequate. Pl.'s Br. 9. Namely, Plaintiff asserts that the ALJ made only a single conclusory finding, i.e., that the providers' opinions were not consistent with the entirety of the record, without citing any record evidence in support. *Id.* at 11. In doing so, Plaintiff contends the ALJ failed to consider that their "opinions were at least partially consistent with the findings of [consulting examiner Russell Stanley, D.O.]." *Id.* at 11–12. Moreover, Plaintiff believes the ALJ "ignored all evidence of the record that supported findings for more severe limitations." *Id.* at 12. The Court disagrees.

To begin, this argument somewhat overlaps with Plaintiff's supportability arguments discussed above. And as noted, "[t]he fact that the ALJ cited certain evidence that [s]he felt supported h[er] decision does not mean that [s]he failed to consider all of the other evidence in the record." *Brunson*, 387 F. App'x at 461. In addition, despite Plaintiff's assertion to the contrary,

15

the ALJ did in fact note the points of agreement between FNP Gutierrez's and Dr. Stanley's assessments. *See* Tr. 18–19. The ALJ summarized the opinions, observing that each recommended that Plaintiff, at times, would require a cane, and that both providers expressed some level of functional limitations in one or more ways—e.g., sitting, standing, walking, bending, stooping, crouching, and squatting. *See id.* But, contrary to Plaintiff's suggestion, the ALJ need not accept a particular limitation based only on the fact that it was recommended by two sources; instead, the ALJ must consider whether the limitations are "consistent with the weight of the *evidence as a whole*." *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (per curiam) (emphasis added); *accord* §§ 404.1545(a)(3), 416.945(a)(3) (requiring an ALJ to consider medical opinions together with the rest of the relevant evidence in the record to assess RFC).

Here, the ALJ rejected the cane recommendation because it was not consistent with the medical evidence, including entries that Plaintiff was "not noted to be using any assistive device at any of her appointments, and she was not . . . using one at the consultative examination."[8] Tr. 19. And concerning the functional limitations, the ALJ again found the severity of Dr. Stanley's limitations (as well as FNP Gutierrez's limitations) to be inconsistent with the objective medical evidence. *See id.* Thus, rather than ignoring this evidence, the ALJ considered it in conjunction

---

[8] Plaintiff disagrees with this characterization. Namely, she argues that "although the ALJ asserts that the evidence reflects Plaintiff had displayed a normal gait throughout examination, this conclusion is erroneous where the ALJ assumes without any evidence to support such statement, that Plaintiff had not used a cane during any other examination," and "absent Plaintiff's singular examination with Dr. Stanley, there is no indication that Plaintiff was not assisted with a cane." Pl.'s Br. 15. Stated differently, Plaintiff claims that the Commissioner cannot prove that Plaintiff did not use a cane during the relevant period. But this argument misses the mark. Plaintiff's argument assumes that it is the Commissioner's burden to *disprove* Plaintiff's disabling condition, when in fact, the opposite is true. *See Gaunder v. Comm'r of Soc. Sec.*, No. 4:19-cv-01002-O-BP, 2020 WL 6128040, at *4 (N.D. Tex. Oct. 19, 2020) (noting that "it is the claimant who bears the burden of presenting evidence of disability"), *R. & R. adopted by* 2020 WL 6128040 (N.D. Tex. Oct. 19, 2020); *cf. Moore v. Barnhart*, No. 1:03–CV–469, 2004 WL 3237347, at *4 (E.D. Tex. Dec. 8, 2004) (holding that ALJ did not need to discuss listing criteria unless "plaintiff introduced evidence relating to those criteria"—requiring otherwise would shift "the burden improperly onto the Commissioner to affirmatively prove a negative"). Accordingly, the ALJ did not err in observing the lack of evidence supporting the opined limitation. *See Ross v. Comm'r, SSA*, No. 6:20-cv-00306, 2021 WL 2935650, at *1 (E.D. Tex. July 13, 2021) (rejecting argument that ALJ wrongly determined claimant did not require a cane where the ALJ cited the "lack of evidence indicating that a cane was needed" as well as doctor's notes describing claimant as having "a steady gait").

with the entirety of the record, considering the inherent reliability of each opinion, the objective medical evidence in support, and the totality of the record. *See Garcia v. Berryhill*, 880 F.3d 700, 705 n.7 (5th Cir. 2018) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)); *King v. Colvin*, No. 4:12–CV–632–A, 2013 WL 6153294, at *3 (N.D. Tex. Nov. 22, 2013) ("The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.").

Beyond the evidence already discussed, the ALJ's RFC discussion includes a thorough review of the record. *See* Tr. 15–20. The ALJ recounted Plaintiff's activities of daily living, her testimony[9] and treatment history, the objective medical evidence, and the findings and opinions of SAMCs Cynthia Linardos, M.D. and Jeanine Kwun, M.D., primary care providers FNP Gutierrez and Dr. Lentz, and consultative examiner Dr. Stanley. *Id.* In doing so, the ALJ discussed the evidence at length, noting: (1) that physical exams, which were generally unremarkable, show Plaintiff has some "range of motion deficits with flexion support limitations," but nevertheless "maintained an active lifestyle" and "retained the ability to perform household chores[ and] hobbies while sitting and taking breaks to walk and stand"; (2) Plaintiff has received only conservative treatment "with further options for treatment available," which her providers were still considering; (3) objective evidence demonstrates that Plaintiff "consistently ambulated with normal gait without the use of an assistive device"; and (4) the overall lack of objective evidence suggesting Plaintiff requires marked exertional or manipulative limitations based on her ability to reach, lift, carry, grasp, and handle light objects. *See* Tr. 17–20. The ALJ found particularly persuasive the limitations suggested by Dr. Linardos and Dr. Kwun because the "nature and degree

---

[9] Including, for example, Plaintiff's testimony that her alleged disability "date corresponds to the date she was laid off from her job for allegedly failing to call in when she was sick," and that she continued to look "for work following her termination and she would have accepted an offer of employment had she received one." Tr. 17, 36–37.

of limitations" they assessed were consistent with and supported by the record evidence. Tr. 20. And "[b]y citing this evidence and connecting it to the opinions of [FNP Gutierrez and Dr. Lentz], the ALJ adequately considered the supportability and consistency factors that tend to contradict these medical opinions." *Wendy M. B. v. Kijakazi*, No. 3:20-cv-02957-BT, 2022 WL 2704038, at *4 (N.D. Tex. July 11, 2022).

In sum, the ALJ relied on the complete medical record in concluding that Plaintiff has the ability to perform light work with certain limitations. To successfully challenge this determination, Plaintiff must do more than simply "highlight evidence contrary to the ALJ's ruling" and instead must "show that there is *no* substantial evidence supporting the ALJ's decision." *Jones v. Saul*, No. 4:20-cv-00772-BP, 2021 WL 2895867, at *5 (N.D. Tex. July 9, 2021) (emphasis added) (citation omitted). Plaintiff has not done so, and remand is therefore not required. *See, e.g., Turner-Clewis v. Saul*, No. 4:20-CV-372-A, 2021 WL 2302770, at *9 (N.D. Tex. May 19, 2021) ("Because there is substantial evidence in the record that supports the ALJ's RFC determination and the ALJ properly considered [the treating physician's] opinions, remand is not required."), *R. & R. adopted by* 2021 WL 2291738 (N.D. Tex. June 4, 2021); *Stephens*, 2020 WL 7122860, at *8 (holding that remand was not required where the ALJ properly analyzed physician's opinions under the regulations, the "RFC determination was based on the medical evidence in the record," and the "RFC determination [wa]s [therefore] supported by substantial evidence").

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **AFFIRM** the Commissioner's decision and **DISMISS** Plaintiff's Complaint with prejudice.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2019); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's this Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: October 31, 2022.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE